HATHORN, BY NEXT FRIEND, v. RICHMOND.

*Degree of Skill Required of Physicians and Surgeons. Their Liability for Malpractice.*

Physicians and surgeons are bound to have and exercise ordinary skill—such skill as physicians and surgeons in the same general neighborhood, in the same general line of practice, ordinarily have and exercise in like cases.

The court charged the jury, that if defendant, in setting plaintiff's broken limb, was wanting in the exercise of proper skill in the tightness of the bandage, still, if defendant's employment ceased when he had set and dressed the limb, and the case then passed into the hands of another surgeon whose duty it was to discover that the bandage was too tight, and who ought to have loosened it and dressed the limb, and if by so doing the injury that resulted from the too tight bandaging could have been prevented, then defendant was not liable for such injury. *Held*, error; that defendant would be liable for his wrongful act, if damage ensued therefrom, but that the *amount* of damages would depend upon other considerations.

CASE. Plea, the general issue, and trial by jury, May Term, 1875, BARRETT, J., presiding.

It appeared in evidence, and was not controverted, that the plaintiff's leg was fractured Dec. 12, 1874, and that defendant visited plaintiff and saw his limb on only two occasions, Dec. 13 and 18, and on each occasion in company with Dr. Ellis. Defendant lived in Woodstock, some twelve miles from plaintiff, and Dr. Ellis was practicing at Barnard, living about three miles from plaintiff. Dr. Ellis was first sent for the day of the accident, and laid the plaintiff's leg onto a double inclined splint, to make him as comfortable as possible, and declined taking the responsibility of reducing the fracture, and in consequence thereof defendant was sent for to come next day and reduce the fracture. Dr. Ellis visited plaintiff thereafter almost every day until Jan. 4, 1875, when another surgeon was called to take charge of the case. Defendant visited plaintiff on Dec. 18, by reason of a letter written by Dr. Ellis at the request of plaintiff's friends, specially requesting defendant to do so. Nothing was claimed by plaintiff but that everything was done properly and well by defendant on

the 18th of December. Plaintiff's sole claim was, that defendant bound the leg so tightly that by reason thereof, and of the instructions given by him to Dr. Ellis, the injury accrued. Plaintiff claimed that Dr. Ellis attended him by the request, and as the servant, of the defendant, and that plaintiff was, from the time defendant was first there, the patient of defendant. Defendant claimed that he was sent for only to take charge of setting the leg with the assistance of Dr. Ellis, and that he did this properly, and then left plaintiff in the hands of Dr. Ellis as his patient, without any expectation of again visiting the case unless specially sent for. All the surgeons called on the part of defendant, testified that the surgeon applying the dressing in any such case, could not tell whether the bandage might prove too tight or too loose, but that this whole matter must necessarily be left with the attending surgeon, whose duty it was to examine carefully in reference thereto, and adjust the dressing and bandages as might be needed, and no testimony was introduced to contradict them.

It was conceded and treated in the trial, that the course taken with the limb in the interval between the time defendant left plaintiff after he had finished the dressing on said Saturday, and his second visit on the 18th, was lacking in proper and ordinary skill and care.

Plaintiff requested the court to charge the jury as follows:

1. If the defendant was employed only to reduce the fracture and set the limb, and in so doing applied the bandage too tightly, and in consequence thereof the injury occurred, the defendant is liable.

2. If the injury occurred because of any bad management or neglect of defendant, or in consequence of any advice or direction of defendant, he is liable.

The charge of the court upon the points covered by the requests and exceptions, was as follows:

As a matter of course, it becomes important to get an idea of what this matter of requisite skill is, because, when you say that a person is liable for unskillfulness, the question is, how much skill is he bound to have and to exercise in order that he should not be liable for a disastrous result? It is a little difficult to define it—you can only describe it or illustrate it. The ordinary

expression is, *ordinary skill.* That means, such skill as doctors in the same general neighborhood, in the same general lines of practice, ordinarily have and exercise in like cases. If a doctor does in a case what the average class of doctors are accustomed to do and would do in such a case, then he exercises what is meant by ordinary skill in a given case. If he exercises such skill, then he is not liable for lack of skill, because the law only requires of him that he should exercise ordinary skill, such as the average of doctors like himself are accustomed to exercise in like cases. If he exercises such skill, then he is not liable for lack of skill, even though injury occurs that might have been prevented if the doctor had possessed and exercised greater skill. A doctor is not bound to be more skillful or more learned or more competent than the average class of doctors, unless he holds himself out as having extraordinary skill. He is not bound to have extraordinary skill or wisdom beyond the books— beyond that held by the average of the profession. If he exercises ordinary skill in a given case, he acquits himself of liability, even though the result is disastrous, that is, only where the disastrous result is produced by his want or his lack of using that ordinary skill. That being so, did Dr. Richmond use ordinary and reasonable care in dressing the leg,—that is, in doing what he did on Saturday, did he set and dress that leg in the manner that doctors like himself in the community would have done the same thing, or are ordinarily accustomed to do the same thing ?

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

If Dr. Richmond had fulfilled the employment that he had, if he had done what he was called upon to do by the employment that he had, when he got through there on Saturday, and that employment did not require him to do more until he was again called on, then, as a matter of course, he was not liable for what ensued, unless what ensued was not produced by the want of proper care, skill, and attention on the part of Dr. Ellis. If Dr. Ellis did what he was called upon to do in the relation he sustained to the case, if he exercised the proper skill, care, and intelligence in performing what was his duty in the relation he sustained to the case, and still the disastrous consequences to that limb flowed from the fault of Dr. Richmond in the original dressing, then, as a matter of course, Dr. Richmond would be liable. But if Dr. Ellis sustained a relation to the case that rendered it his duty and not Dr. Richmond's, to care for and see to the proper condition of that limb with reference to the dressing that Dr. Richmond had applied, and the disastrous consequences flowed from his lack of giving proper attention to the subject after

it had gone out of Dr. Richmond's hand and treatment, then, as a matter of course, Dr. Richmond cannot be held liable.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

I restate, passing over what I have already said, and putting to you now as a distinct point, though the elements of it are fulfilled in what I have already stated to you; if Dr. Richmond was wanting in the exercise of proper skill in the tightness of the bandage, still, if his employment ceased when he had set and dressed the limb, and the case and the treatment of the limb fell into the hands of Dr. Ellis, and it was the duty of Dr. Ellis to discover that the bandage was too tight and ought to be loosened and re-dressed, and he ought to loosen it and re-dress the limb, if by so doing, by loosening the bandage and re-dressing the limb, the injury of the tight bandaging could have been prevented, then Dr. Richmond would not be liable for that injury. If it would have become his duty in the position Dr. Ellis had, to have discovered that the bandage was too tight, and to have loosened it and re-dressed the limb, and if by that the injury by the too tight bandage would have been prevented, then Dr. Richmond would not have been liable for the injury. Now upon this proposition you are to consider the evidence.

The court complied no further with said requests than is shown by the charge as given. To such non-compliance, and to so much of the charge given as is not conformable to said requests, the plaintiff excepted. Verdict for defendant.

*Denison & Son* and *Wilson*, for plaintiff.

The charge conveys the idea that if the defendant would " average in skill with the doctors in the neighborhood, he would not be liable." We insist that is not the criterion. If so, a bevy of quacks in any locality could establish the amount of requisite skill.

The court charged that " if Dr. Richmond was wanting in the exercise of proper skill in the tightness of the bandage, &c., he was not liable." Admitting, as the charge does, that the defendant was guilty of unskillfulness or negligence, the first negligence, the negligence from which the injury directly flowed, can it be that he is exonerated by the subsequent negligence of Dr. Ellis ? *Illidge* v. *Goodwin*, 5 C. & P. 190 ; *Lynch* v. *Nurdin*, 41 E. C. L. 422 ; *Bridge* v. *Grand Junction R. R.* 3 M &

W. 244; *Cone* v. *Robinson*, 22 Vt. 222. In this case the cause of action was complete when the defendant unskillfully dressed the limb. If Dr. Ellis had been the most skillful of surgeons, and had removed the bandage on the next morning, and thus saved the limb, yet the defendant would have been liable for all the pain and suffering caused by said bandage till it was so removed. The unskillfulness of Dr. Ellis, at most, only aggravated the result. Such unskillfulness could only affect the amount of damages, and not the right of action. *Wilmot* v. *Howard*, 39 Vt. 457.

*Wm. E. Johnson* and *W. C. French*, for defendant.

The court below charged that the surgeon must have and exercise ordinary skill. In this there was no error, for it is the way all the text books define it. Shearman & Redf. Negl. ss. 436, 437, 434, note; Williams Torts, 253; *Lamson* v. *Humphrey*, 9 Conn. 209.

There was no error in the charge as to defendant not being liable if Dr. Ellis did not remove the tight bandage. The surgeons who testified all agreed that a surgeon applying a dressing at the time of reducing the fracture, could not, in any such case, determine whether the dressing would prove too tight or too loose, but that this matter had to be left to the attending physician, whose duty it was to watch the matter carefully, and properly adjust and arrange as the dressings and bandages might require. The proposition of the charge is expressly founded upon the supposition that the jury should find that nothing more was required of Dr. Richmond after that Saturday. It was conceded that after that Saturday and before the Thursday when Dr. Richmond was there the second time, the treatment of the limb was lacking in ordinary care and skill. Can it be possible that, in any view, a surgeon who is called to reduce and dress a fracture, and is not permitted to attend to it afterwards, can be liable for an injury happening by reason of a neglect of duty by the attending physician? This case was brought, on this branch, precisely within the principle of *Wilmot* v. *Howard*, 39 Vt. 456.

71

The court properly charged the jury upon the question of the character in which Dr. Ellis was attending the plaintiff, whether as the servant of Dr. Richmond, and to carry out his directions, or whether in his own capacity as a surgeon, to act upon his own knowledge and judgment.

The opinion of the court was delivered by

PIERPOINT, Ch. J.   The questions in this case arise upon the requests of the plaintiff made to the court below to charge the jury, to the refusal of the court to so charge, and to the charge as given.

The first objection to the charge is in respect to the degree of skill and surgical knowledge which a surgeon is bound to possess and exercise in the discharge of his duty as a surgeon when called upon to act in that capacity and undertakes to do so.   We think the rule as laid down by the court is substantially correct, and in accordance with the well-settled law on the subject.   There are certain expressions used in the charge which, taken by themselves, might seem to indicate a lower degree of skill than the law requires : but when the whole charge is taken together, it clearly gives the true rule, and so distinctly that the jury could not have mistaken it.

The plaintiff requested the court to charge the jury, that " if the defendant was employed only to reduce the fracture and set the limb, and in so doing applied the bandage too tightly, and in consequence thereof the injury occurred, the defendant is liable." This request entirely ignores the question as to the degree of skill that was brought to bear and was exercised upon the occasion. It may be true, and in view of the testimony referred to in this case probably is, that the most skillful surgeon cannot tell the exact amount of pressure that should be brought to bear upon the broken limb by means of the bandages ; and if *that* could be determined, it might be still more difficult to determine after the bandages were applied, whether or not the right amount of pressure had been obtained.   It may be a matter that can only be determined by experiment and time.   The rule called for by the

request, would require the surgeon to be infallible. We think this request was properly refused.

The question then arises, did the court charge correctly upon the subject of that · request; and here we have more difficulty. The court, after commenting upon the subject at considerable length, condensed the subject of their remark, and presented the rule to the jury in a manner that the court evidently intended the jury should, and they undoubtedly did, regard as the rule by which they were to be guided in coming to a verdict. Hence we do not feel at liberty to go back of the rule so given, even though it should seem to be somewhat in conflict with what had before been said. The court say :

" I restate, passing over what I have already said, and putting to you now as a distinct point, though the elements of it are fulfilled in what I have already stated to you, · if Dr. Richmond was wanting in the exercise of proper skill in the tightness of the bandage, still, if his employment ceased when he had set and dressed the limb, and the case and the treatment of the limb fell into the hands of Dr. Ellis, and it was the duty of Dr. Ellis to discover that the bandage was too tight and ought to be loosened and redressed, and he ought to loosen it and redress the limb, if by so doing, by loosening the bandage and redressing the limb, the injury of the tight bandaging could have been prevented, then Dr. Richmond would not be liable for that injury. If it would have become his duty in the position Dr. Ellis had, to have discovered that the bandage was too tight, and to have loosened it and redressed the limb, and if by that the injury by the too tight bandage would have been prevented, then Dr. Richmond would. not have been liable for the injury."

This proposition presupposes that Dr. Richmond did not exercise proper care and skill in doing his work, and by reason thereof the limb was bandaged too tight ; and from this it follows that if he had exercised the proper and required degree of skill, the limb would not have been bandaged too tight, hence the act of Dr. Richmond in bandaging the limb in the way he did, was a wrongful act. If the bandage was too tight, it must have been injuriously so, else it was not too tight. The extent of the injury, of course, would depend upon the length of time it so remained ; but the foundation was laid for a serious result, and every hour

that the limb remained in that condition, brought that result so much the nearer. If the patient suffers pain from the outset, by reason of such too tight bandage, who is responsible for that? Or if, for the same reason, it becomes necessary to call in another surgeon to relieve the patient from the effect of the wrongful act of the first, who is responsible for that? Clearly, the party who has done that wrong; and is it any answer for the first surgeon to say, " The second surgeon did not do his work any better than I did mine, if he had, the injury would have been less " ? It is to be borne in mind that the question is not *what* the plaintiff is entitled to recover, but whether, upon the supposition stated in the charge, the plaintiff would be entitled to recover at all, for merely nominal or any other damages. The question of damages is not before us, as no exceptions were taken to the charge in respect thereto, and the subject was not reached by the jury.

It would seem from the case as stated, that the whole injury that the plaintiff sustained, resulted directly from the tightness of the bandage as applied by the defendant. How far the defendant is relieved from the responsibility by the want of the exercise of proper skill by Dr. Ellis, is a question that was not passed upon by the court below, except to say that the neglect of Dr. Ellis as supposed in the charge, would operate as an entire discharge of the defendant from all liability, not only for the original wrongful act, but from all the injurious consequences that ultimately resulted therefrom.

The case was put to the jury in a manner that they would understand therefrom, that it was no injury to the plaintiff to put on the bandage too tight, and that no injury could ensue therefrom until such time as Dr. Ellis, in the exercise of proper care and skill, should have discovered the fact and relieved the plaintiff from the error negligently committed by the defendant, thus making the unskillful act of the defendant a matter of no importance in the case. The jury were not called upon to decide whether the defendant exercised proper skill or not, provided the jury found that Dr. Ellis did not exercise proper skill in treating the case after the patient was left in his charge, even though injury may have ensued from the wrongful act of the defendant be-

fore Dr. Ellis could fairly be charged with a failure to exercise the care and skill that he was bound to exercise in the discharge of his duty to the patient as the attending surgeon.

We think the case should have been submitted to the jury under proper instructions, to find whether the defendant was guilty of negligence and want of proper skill in the first instance in setting and dressing the limb. If the jury should find that he was, then, either that the defendant was liable for all the injury the plaintiff sustained, without reference to the misconduct or want of skill of Dr. Ellis, or else that he was liable for such injury as occurred from the wrongful act of the defendant before it became the duty of Dr. Ellis to intervene and relieve the patient from the consequences likely to ensue from the unskillful acts of the defendant. Which of these rules should be adopted, we have no occasion now to say. It does not appear that the jury have as yet passed upon the question whether or not the defendant was negligent or unskillful in setting and dressing the limb, and no rule of damages has been propounded by the court or acted upon by the jury ; hence, no question in respect thereto arises upon the bill of exceptions. The matter has been discussed to some extent in the argument, but it will be in time to decide it when it ultimately arises.

Judgment reversed, and cause remanded.