# CHARLESTON.

W. A. VAUGHAN v. MEMORIAL HOSPITAL, a *Corporation*

(No. 5394)

Submitted October 13, 1925.    Decided November 3, 1925.

1.  HOSPITALS—*Hospital Conducted for Private Gain Held Liable to Patient for Injuries From Negligence of Physician.*

    A hospital conducted for private gain is liable to its patient for injuries sustained by him in consequence of incompetency or negligence of a physician treating him at its instance, under a contract to furnish him proper treatment. (p. 292).

    (Hospitals, 30 C. J. § 15.)

2.  PHYSICIANS AND SURGEONS—*Physician is Only Required to Exercise Reasonable Skill and Diligence of Average Member of Profession.*

    A physician is not required to exercise the highest degree of skill and diligence possible, in the treatment of an injury, unless he has by special contract agreed to do so. In the absence of such special contract, he is only required to exercise such reasonable and ordinary skill and diligence as are ordinarily exercised by the average of the members of the profession in good standing, in similar localities and in the same general line of practice, regard being had to the state of medical science at the time.    (p. 293.)

    (Physicians and Surgeons, 30 Cyc. p. 1570.)

3.  SAME—*Physician Exercising Ordinary Skill and Diligence Not Liable for Mistake of Judgment.*

    Where a physician exercises ordinary skill and diligence, keeping within recognized and approved methods, he is not liable for a mere mistake of judgment.  However, he is liable

for the result of an error of judgment, where such error is so gross as to be inconsistent with that degree of skill which it is the duty of a physician to possess.   (p. 294.)

(Physicians and Surgeons, 30 Cyc. p. 1578.)

4.  EVIDENCE—*Person Suing for Malpractice Should Show Proper Diligence to Have Physician Who Attended Him Present as Witness or Take His Deposition, to Avoid Presumption That Testimony Would Have Been Adverse to Plaintiff.*

If the testimony of the physician who removed the diseased bone from the injured foot of the plaintiff was material to his case, and plaintiff wished to avoid the effect of the legal presumption that, if he had testified, his testimony would have been adverse to him, he should show proper diligence to have him present as a witness or take his deposition.   (p. 295.)

(Evidence, 22 C. J. § 56.)

5.  NEW TRIAL—*Granting New Trial Held Proper in View of Lack of Certain Evidence.*

A case where this court cannot say that the circuit court abused its discretion in granting a new trial.   (p. 295.)

(New Trial, 29 Cyc. p. 759.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Action by W. A. Vaughan against the Memorial Hospital for malpractice.  Verdict for plaintiff was set aside and new trial awarded, and plaintiff brings error.

*Affirmed.*

*Hugh G. Woods,* for plaintiff in error.

*Reynolds & Reynolds* and *Hartley Sanders,* for defendant in error.

WOODS, JUDGE:

From an order of the circuit court of Mercer county setting aside a verdict for the plaintiff and awarding defendant a new trial, the plaintiff prosecutes this writ of error.

On April 5, 1923, plaintiff, W. A. Vaughan, a coal miner, by reason of a fall of slate and coal, sustained an injury to

his right foot—two bones near the first and second joint of the second and third toes being broken. On April 7th he was taken to Memorial Hospital, defendant, for treatment, under whose care he remained until discharged some weeks later. During said period of treatment his foot and ankle were encased first in a wire cast, then a plaster of paris cast. The latter was worn until it became loose, by reason of the swelling in the injured member having subsided, when a second plaster of paris cast was made. These casts, according to plaintiff, did not extend out beyond the broken parts of the foot. After discharge from treatment, plaintiff's foot became swollen, accompanied by severe pain. He consulted a doctor at Matoka, who made an X-ray examination, disclosing the fact that the bones were not knitted. He later came to Charleston, where the bones were removed.

The first ground of defense urged by the counsel for the defendant hospital is that it is not responsible for any default on the part of the physicians Todd and Rixey, they being independent agents; that, if this defense fails, there was no negligence in the diagnosis and treatment of the plaintiff's injury by said physicians.

A hospital incorporated and conducted for private gain, for the benefit of its stockholders, is liable in damages to its patients for negligence or misconduct of its officers and employees. *Jenkins* v. *Charleston General Hospital & Training School,* 90 W. Va. 230; *Hogan* v. *Hospital Co.,* 63 W. Va. 84; *Brown* v. *La Societe Francaise,* 138 Cal. 475; *Railroad Co.* v. *Wood,* 95 Tex. 223; 13 R. C. L. 949. The purely private character of the defendant is practically admitted; the certificate of incorporation under the laws of West Virginia being in evidence in the case. The capital invested is like capital invested in any other corporation conducted for profit. In its contracts it stands upon the same basis as any other contractor, and, as to employees and third persons, it is subject to the same general rule, *respondeat superior. Jenkins* v. *Hospital, supra.* The plaintiff and defendant were brought into relation with each other through the agency of the employer of the former, the Weyanoke Coal & Coke Company. There he received the surgical and medical care to which he

was entitled under the rules and regulations of the State Compensation Commissioner, the expense of such treatment and care to be paid out of the Workmen's Compensation Fund. The application (Form C. D. 12) to the State Compensation Commissioner for payment of said medical, surgical and hospital treatment afforded plaintiff was rendered in the name of the defendant. It included the item for the operation on the plaintiff's foot by the physicians Todd and Rixey. It appeared in evidence that said doctors are the managers of the defendant hospital; that the X-ray machine used in the hospital for examination of this plaintiff's injury was the property of the institution. Under these conditions, the authorities cited hold that the said defendant cannot absolve itself from the obligation it owed to the plaintiff patient to furnish him proper treatment, on the claim that the physicians who treated him, at its instance, were independent contractors. In view of this, the court erred in submitting the question of whether the medical and surgical treatment was rendered the plaintiff by the physicians on their own account to the jury, in instruction number three, given to the jury at the instance of the defendant. It was likewise error to refuse instruction number one requested by the plaintiff, which told the jury that a hospital incorporated and conducted for private gain or the benefit of its stockholders is liable in damages to its patients for negligence or misconduct of its officers and employees.

It is settled law in this state in this class of cases that a physician or surgeon is bound to bestow such reasonable and ordinary care, skill and diligence as physicians and surgeons in the same general line of practice ordinarily have and exercise in like cases, time and locality being taken into consideration; and that a physician is bound to exercise the average degree of skill possessed by the profession in such locality. This holding is in accord with the great weight of authority elsewhere. We think it may be said to be the generally accepted doctrine that a physician is not required to exercise the highest degree of care or skill and diligence possible, in the treatment of an injury, or disease, unless he has by special contract agreed to do so. In the absence of

such special contract, he is only required to exercise such reasonable and ordinary skill and diligence as are ordinarily possessed and exercised by the average of the members of the profession in good standing, in similar localities and in the same general line of practice, regard being had to the state of medical science at the time. *Dye* v. *Corbin,* 59 W. Va. 266; *Lawson* v. *Conaway,* 37 W. Va. 159; *Kuhn* v. *Broomfield,* 34 W. Va. 252; 3 Wharton & Stille's Med. Juris. (5th . Ed.) Sec. 473; *Gramm* v. *Boenar,* 56 Ind. 497; *Small* v. *Howard,* 128 Mass. 131; *Hathorn* v. *Richmond,* 48 Vt. 557; *Pelky* v. *Palmer,* 109 Mich. 561. The general rule just stated, however, does not make the physician in any sense a warrantor or insurer of the success of his treatment, in the absence of a special contract to that effect. *Lawson* v. *Conaway, supra; Kuhn* v. *Broomfield, supra.* The following quotation from Judge (now Chief Justice) Taft, in *Ewing* v. *Goode,* (C. C.) 78 Fed. 442, is apropos here: ''A physician is not a warrantor of cures. If the maxim *'res ipsa loquitur'* were applicable * * * and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.' ''

Instructions numbers two and three of the plaintiff and number one of the court, embodied the foregoing principles of law, and were properly given to the jury as the law of the case. Instruction number four offered by the plaintiff was properly refused. It would have told the jury in effect that the physician was responsible for an error of judgment, without qualification, in the treatment of the plaintiff. The law is that if he possesses ordinary skill and exercises ordinary care in applying it, he is not responsible for mistake of judgment, unless such error of judgment is so gross as to be inconsistent with that degree of skill which it is the duty of a physician to possess. *Dye* v. *Corbin, supra; Wurdemann* v. *Barnes,* 92 Wis. 206; *Sims* v. *Parker,* 41 Ill. App. 284; *Bonnett* v. *Foote,* 47 Colo. 282; *Staloch* v. *Holm,* 100 Minn. 276. Instruction number six of the plaintiff was a repetition

of the law given in other instructions and the court followed the rule so often stated by this court in refusing to give it.

The plaintiff maintains that the improper and negligent treatment consisted in the physician failing to place the paris cast on the foot so as to reach the broken parts and give rest and support to them; that as a result the broken bones were not placed and held in apposition the one to the other; that the muscles, ligaments, and tendons were not properly placed, so that they could adhere to their proper places by natural processes, thereby causing the foot to become diseased, and pus to accumulate and remain in the region of such diseased part; and that thereby the bones of the part became deteriorated and broken down, so that it became and was necessary to remove them. The result was a permanently weak, diseased and crippled foot.

The defendant contends that when the patient was received in its care that his foot was much swollen and that there were two open wounds on the foot, one between the great toe and the one next to it, and the other between the little toe and the one next to it; that both wounds were infected and exuding serum and pus; that after the infection was abated by the treatment the paris cast was placed on the foot, and the end left open so that the infected places could be watched and dressed; that the broken bones were properly set; and that the diseased bones were the result of their non-use—a disease known in medical science as osteoporosis.

The conclusion reached by the court as to the disposition of the case makes it unnecessary to detail at length the evidence offered in support of each of these diverse contentions. At the trial the plaintiff relied almost entirely upon the result which he claimed followed the treatment—that, by reason of the broken bones not being properly set, the bones at the point of the injury decayed and produced pus. Upon this question the evidence was conflicting. The plaintiff, Dr. Carr and the X-ray taken by the physician at Matoka tended to sustain this theory. The bones taken from the foot were introduced. The court properly refused to permit them to go in evidence to the jury for lack of being properly identified. Dr. Walker who took them from the foot was not

introduced as a witness, nor was his deposition taken. His absence was not accounted for. He unquestionably possessed peculiar knowledge concerning facts vitally essential to the plaintiff's case; the condition of the bones when removed, what caused the condition, and whether there was pus present. It is a well known principle of law that where a witness has the opportunity and power of knowing the truth on an issue the failure to call him by one upon whom the burden rests to sustain such issue, raises the presumption that if present his evidence would have been to his detriment. *Coal Co.* v. *Mining Co.*, 82 W. Va. 311; 22 C. J. 115, and cases there cited. The circuit judge doubtless thought this testimony should have been offered. He has a discretion to exercise when a case has not been fully developed. He may set aside the verdict to do justice to all parties. We cannot say he abused that discretion in this case. Our duty, therefore, is to affirm his action. We give effect to the general rule that it takes a stronger case in 'the appellate court, to reverse an order granting, than in refusing a new trial. *Wilson* v. *Johnson*, 72 W. Va. 742. The case will go back for a new trial to be had in accordance with the principles of law herein announced.

*Affirmed.*