**Rodney S. BELLOMY, et al., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 3:94–0507.**

United States District Court,
S.D. West Virginia,
Huntington Division.

June 2, 1995.

Dee–Ann Burdette, Kenova, WV, for plaintiffs.

Stephen M. Horn, Asst. U.S. Atty., Rebecca A. Betts, U.S. Atty., Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

On May 8, 1995 this matter came on for trial to the Court. Following the presentation of evidence, the Court took the case under advisement and it is now ripe for adjudication.[1]

Plaintiffs brought this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346 (1992)[2] and 2671, *et seq.* (1988). Plaintiff previously filed an administrative tort claim with the United States Department of Veterans Affairs contending the Government negligently failed to diagnose and treat plaintiff Rodney S. Bellomy's malignant lymphoma. When the administrative claim was denied, Plaintiffs filed this action.

### I.

At trial, Mr. Bellomy testified he entered the Veterans Administration Medical Center in Huntington, West Virginia on January 23, 1992 after an onset of abdominal pain and discomfort. Upon admission Mr. Bellomy was subjected to a battery of gallbladder tests, including a gallbladder ultrasound, an oral cholecystogram, a HIDA scan and a upper GI series. The tests did not indicate any abnormalities. Nonetheless, physicians at the hospital recommended abdominal surgery. Mr. Bellomy declined to undergo surgery. Mr. Bellomy's abdominal pain subsided and he was released from the hospital a week later with a diagnosis of probable acalculous cholecystitis (inflammation of the gallbladder without discoverable gallstones).

Mr. Bellomy next experienced abdominal pain in June of 1992. Rather than return to the Veteran's Hospital, Mr. Bellomy brought his complaints to Dr. Jack Traylor, a Huntington general surgeon and personal friend. After reviewing Mr. Bellomy's records from

---

1. Prior to trial, both parties submitted proposed findings of fact and conclusions of law. The only live testimony presented at trial was that of the plaintiffs, Mr. and Mrs. Bellomy. All of the expert medical testimony was presented by way of deposition.

2. Title 28 U.S.C. § 1346 states, in pertinent part: "[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

the Veteran's Hospital, Dr. Traylor performed another gallbladder ultrasound on June 22, 1992. The ultrasound showed a normal gallbladder, but showed a 16 centimeter globulated mass in the epigastrium.[3] Dr. Traylor then ordered Mr. Bellomy to undergo a CT scan and ultrasound. Because these tests showed a mass consistent with lymphoma, Dr. Traylor ordered a CT guided biopsy performed. The biopsy revealed an abdominal mass of malignant lymphoma.

Following his finding of malignant lymphoma, Dr. Traylor referred Mr. Bellomy to Dr. Gerrit Kimmey, a Huntington oncologist. Dr. Kimmey prescribed a treatment plan consisting of two cycles of inpatient chemotherapy. Mr. Bellomy underwent the cycles of chemotherapy at the Cabell–Huntington hospital between July 7, 1992 and August 7, 1992. The lymphoma went into remission until May, 1993 when it reappeared. Mr. Bellomy underwent two more courses of chemotherapy in June and July of 1993 at St. Mary's hospital in Huntington and then submitted to bone marrow treatment in August of 1993 at Vanderbilt University Medical Center. Mr. Bellomy's cancer has been in remission since that time.

It is undisputed Mr. Bellomy's treatment was a very difficult process and painful for him to endure. He suffers from continuing side effects from the treatment, and may suffer cataracts in the future. It is also undisputed his medical care has resulted in substantial liability for medical and hospital bills.

After unsuccessfully pursuing an administrative tort claim, Plaintiffs filed the instant action alleging the physicians at the Veterans Administration hospital in Huntington were negligent when they failed to diagnose his malignant lymphoma upon his admission to the hospital with abdominal pain in January of 1992. They assert the government physicians who treated Mr. Bellomy failed to treat him with the applicable standard of medical care and breached the duty of care owed to him. This breach, allege plaintiffs, proximately caused or contributed to plaintiffs suffering certain damages, including Mr. Bellomy's relapse in May of 1993.

## II.

As sovereign, the federal government is immune from suit unless it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *Gould v. United States Dep't of Health and Human Servs.*, 905 F.2d 738, 741 (4th Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 673, 112 L.Ed.2d 666 (1991); *Muth v. United States*, 804 F.Supp. 838, 843 (S.D.W.Va.1992) (Haden, C.J.), *aff'd*, 1 F.3d 246 (4th Cir.1993). The Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"), creates a limited waiver of sovereign immunity. This limited waiver of sovereign immunity is subject to the prerequisite that the tort claim first be submitted to the appropriate federal agency within two years of accrual of the cause of action and that there be a final denial of the claim by the reviewing agency. Title 28 U.S.C. §§ 2401(b), 2675; *Gould, supra, citing West v. United States*, 592 F.2d 487, 492 (8th Cir.1979); *Kielwien v. United States*, 540 F.2d 676, 679 (4th Cir.), *cert. denied*, 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976). Plaintiffs have met the jurisdictional requirements: they timely filed an administrative tort claim with the appropriate federal agency, the Department of Veteran's Affairs, and that claim was denied.

The waiver of sovereign immunity authorized by the FTCA extends to claims made against the United States for money damages arising from negligent acts or omissions of federal employees. Title 28 U.S.C. §§ 2671–2680. It is undisputed the physicians at the Veterans Administration hospital in Huntington who initially treated Mr. Bellomy were federal employees. Disposition of actions arising under the FTCA is to be made pursuant to the tenets of law applicable in the state where the negligent act or omission is alleged to have occurred. *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991) ("A plaintiff has an FTCA cause of action against the government only if she would also have a cause of action under state law against a private person in like circumstances. State law determines whether there is an underlying cause of action[.]");

---

**3.** The epigastrium is the upper central region of the abdomen.

*Dunbar Corp. v. Lindsey,* 905 F.2d 754, 757 (4th Cir.1990) ("United States liability under the FTCA depends upon state law."); *Tolliver v. United States,* 831 F.Supp. 558, 560 (S.D.W.Va.1993). The alleged negligence occurred in Huntington, West Virginia. The substantive law of West Virginia is applicable to the instant dispute.

### III.

■ In West Virginia, the essence of a medical malpractice action arises from a physician-patient relationship. *Rand v. Miller,* 185 W.Va. 705, 706, 408 S.E.2d 655, 656 (1991). Where, as here, the physician-patient relationship is established, the physician owes his or her patient a duty of care when rendering medical services. *West Virginia Code* § 55–7B–3 (1986) defines the elements of proof necessary to make out a claim of medical malpractice in West Virginia:

> "The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
>
> (a) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
>
> (b) Such failure was a proximate cause of the injury or death."

■ The plaintiff bears the burden of proving negligence and lack of skill on the part of the physician proximately caused the injuries suffered. *Hicks v. Chevy,* 178 W.Va.

118, 121, 358 S.E.2d 202, 205 (1987); *Syllabus* Point 2, *Totten v. Adongay,* 175 W.Va. 634, 337 S.E.2d 2 (1985); *Syllabus* Point 1, *Hinkle v. Martin,* 163 W.Va. 482, 256 S.E.2d 768 (1979); *Syllabus* Point 4, *Hundley v. Martinez,* 151 W.Va. 977, 158 S.E.2d 159 (1967); *Syllabus* Point 1, *Schroeder v. Adkins,* 149 W.Va. 400, 141 S.E.2d 352 (1965); *Syllabus* Point 1, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964); *Syllabus, White v. Moore,* 134 W.Va. 806, 62 S.E.2d 122 (1950); *Syllabus* Point 2, *Dye v. Corbin,* 59 W.Va. 266, 53 S.E. 147 (1906). *See W.Va. Code* § 55–7B–7 (1986) ("The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff[.]").

Ordinarily, a claim of medical malpractice must be supported by expert testimony.[4] *Lutz v. Estate of Hillier,* 574 F.Supp. 1032, 1033 (S.D.W.Va.1983) (Haden, C.J.)[5]; *Cunningham v. West Virginia American Water Co.,* — W.Va. —, —, n. 5, 457 S.E.2d 127, 132, n. 5 (1995); *Syllabus* Point 1, *Farley v. Meadows,* 185 W.Va. 48, 404 S.E.2d 537 (1991); *Hicks v. Chevy,* 178 W.Va. at 121, 358 S.E.2d at 205; *Syllabus* Point 3, *Totten v. Adongay, supra; Syllabus* Point 2, *Hinkle v. Martin, supra; Syllabus* Point 5, *Hundley v. Martinez, supra; Duling v. Bluefield Sanitarium, Inc.,* 149 W.Va. 567, 583, 142 S.E.2d 754, 764 (1965); *Syllabus* Point 5, *Schroeder v. Adkins, supra; Syllabus* Point 2, *Roberts v. Gale, supra. See also Syllabus* Point 2, *Howell v. Biggart,* 108 W.Va. 560, 152 S.E. 323 (1930). *See generally, Syllabus* Points 1–6, *Mayhorn v. Logan Medical Foundation,* 193 W.Va. 42, 454 S.E.2d 87 (1994).

---

**4.** *See W.Va.Code* § 55–7B–7:

"The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by one or more knowledgeable, competent expert witnesses if required by the court. Such expert testimony may only be admitted in evidence if the foundation, therefor, is first laid by establishing that: (a) The opinion is actually held by the expert witness; (b) the opinion can be testified to with reasonable medical probability; (c) such expert witness possesses professional knowledge and expertise coupled with knowledge of the applicable standard of care to which his or her expert opinion testimony is

addressed; (d) such expert maintains a current license to practice medicine in one of states of the United States; and (e) such expert is engaged or qualified in the same or substantially similar medical field as the defendant health care provider."
However, *see* note 5, *infra.*

**5.** In *Lutz* this Court denied a motion for summary judgment despite a lack of expert testimony offered by the plaintiff because the plaintiffs there could "establish the requisite elements of their cause of action by examination of the Defendant's experts as adverse witnesses and by introducing into evidence the deposition testimony of those experts[.]" *Id.* at 1034.

■ To be admissible, the expert testimony supporting a plaintiff's medical malpractice claim need not be expressed in terms of reasonable *certainty*, but must be expressed at least in terms of reasonable *probability*. *Syllabus* Point 3, *Hovermale v. Berkeley Springs Moose Lodge No. 1483*, 165 W.Va. 689, 271 S.E.2d 335 (1980) ("Where a physician is testifying as to the causal relation between a given physical condition and the defendant's negligent act, he need only state the matter in terms of a reasonable probability."); *Syllabus* Point 1, *Pygman v. Helton*, 148 W.Va. 281, 134 S.E.2d 717 (1964) ("Medical testimony to be admissible and sufficient to warrant a finding ... of proximate cause of an injury is not required to be based upon a reasonable certainty that the injury resulted from the negligence of the defendant. All that is required to render such testimony admissible and sufficient ... is that it should be of such character as would warrant a reasonable inference ... that the injury in question was caused by the negligent act or conduct of the defendant."). *See Syllabus* Point 6, *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975) (Haden, C.J.) ("Although an injured party is required to prove actionable negligence by a preponderance of the evidence, the law does not require that the plaintiff exclude every other plausible theory as to the cause and effect of the [injury]."). *Cf., Syllabus* Point 13, *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974) (Haden, J.) ("In an injury case where the manifestations of the permanent injury may be obscure and the extent of the injury itself may be obscure because of its character, positive medical evidence to a degree of reasonable certainty that the injury is permanent is sufficient to take the question to the jury and to support an award of damages for the future effects of such injury.").

■ The physician is not bound to provide the patient with the highest degree of care possible. *Syllabus* Point 2, in part, *Schroeder v. Adkins, supra* ("A [physician] is not required to exercise the highest degree of skill and diligence possible in the treatment of an injury or disease, unless he has by special contract agreed to do so."); *Syllabus* Point 2, in part, *Vaughan v. Memorial Hospital*, 100 W.Va. 290, 130 S.E. 481 (1925); *Syllabus* Point 3, in part, *Dye v. Corbin, supra*. Nor does a physician warrant the treatment provided will be successful. *Syllabus* Point 3, *Schroeder v. Adkins, supra; Syllabus* Point 4, *Dye v. Corbin, supra* ("A physician does not warrant or insure that his treatment will be successful, in the absence of a special contract to that effect."). The mere fact a patient is not cured by the physician's treatment does not establish or raise a presumption of negligence. *Syllabus* Point 4, *Schroeder v. Adkins, supra; Syllabus* Point 5, *Dye v. Corbin, supra* ("Failure on the part of the physician to effect a cure does not alone establish or raise a presumption of want of skill or negligence on his part.").

Where a physician does not specially contract to provide a higher degree of care, he or she "is required to exercise only such reasonable and ordinary skill and diligence as are ordinarily exercised by the average members of the profession in good standing ... and in the same general line of practice, regard being had to the state of medical science at the time[ ]" the cause of action accrued. *Syllabus* Point 2, in part, *Schroeder v. Adkins, supra; Syllabus* Point 2, in part, *Vaughan v. Memorial Hospital, supra; Syllabus* Point 3, in part, *Dye v. Corbin, supra*. *See Syllabus* Point 4, in part, *Browning v. Hoffman*, 86 W.Va. 468, 103 S.E. 484 (1920) ("If the [physician] adopts, in the treatment of a case, a method established and approved by physicians ... generally ..., at the time [of the treatment], and is not negligent or careless in its application, he is not liable for injuries caused by such treatment."). Thus, "the controlling issue [in a medical malpractice trial] is whether [the physician] has exercised reasonable and ordinary care, skill and diligence, such as accords with the usual standards of the profession as practiced by accredited [physicians.]" *Syllabus* Point 4, *Maxwell v. Howell*, 114 W.Va. 771, 174 S.E. 553 (1934).

■ Moreover, where there is more than one method of medical treatment accepted and applied by average physicians similarly situated, the physician may take into account the particular circumstances of each case and

may exercise his honest and best judgment in selecting a course of treatment for individual patients. Thus, where more than one acceptable method of treatment is available, he need not choose the best one. *Syllabus* Point 2, *Maxwell v. Howell, supra; Syllabus* Point 5, *Browning v. Hoffman, supra* ("If there are two or more approved methods of treatment of an injury of the kind committed to his care, [a physician] may adopt the one which, in his honest opinion, will be the more efficacious and appropriate under all the circumstances, and, in such case, he is not liable for an injury resulting from an error in his judgment, if there be one. He is not bound at his peril to adopt the best method.") *See Syllabus* Point 3, in part, *Vaughan v. Memorial Hospital, supra* ("Where a physician exercises ordinary skill and diligence, keeping within recognized and approved methods [of medical care], he is not liable for a mere mistake in judgment".); *Syllabus* Point 6, *Dye v. Corbin, supra.*

 On the other hand, a physician has a duty to give a patient the care and attention required by the known exigencies of the patient's case. *Syllabus* Point 1, *Young v. Jordan,* 106 W.Va. 139, 145 S.E. 41 (1928) ("It is the duty of a physician, who has undertaken the treatment of a patient, to give to the patient such care and attention as the known exigencies of the case require."). A physician is liable in tort when he or she makes a gross error[6] in judgment at odds with the degree of skill a physician is under a duty to possess. *Syllabus* Point 3, in part, *Vaughan v. Memorial Hospital, supra* ("[A physician] is liable for the result of an error of judgment, where such error is so gross as to be inconsistent with that degree of skill which it is the duty of a physician to possess."); *Syllabus* Point 7, *Dye v. Corbin, supra.*

 A plaintiff in a negligence action has the burden of showing the injuries complained of were proximately caused by the negligence. *Syllabus* Point 3, *Hartley v. Crede,* 140 W.Va. 133, 82 S.E.2d 672 (1954) ("To be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury."). *Accord, Syllabus* Point 1, *Wehner v. Weinstein,* 191 W.Va. 149, 444 S.E.2d 27 (1994); *Syllabus* Point 11, *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990); *Syllabus* Point 4, *Haddox v. Suburban Lanes, Inc.,* 176 W.Va. 744, 349 S.E.2d 910 (1986); *Syllabus* Point 3, *Evans v. Farmer,* 148 W.Va. 142, 133 S.E.2d 710 (1963). The proximate cause of an injury has two dimensions: first, the injury resulting from the negligence must have been reasonably foreseeable to a prudent person; and second, the act or omission must have caused the injury. *Syllabus* Points 3 and 4, *Matthews v. Cumberland & Allegheny Gas Co.,* 138 W.Va. 639, 77 S.E.2d 180 (1953). *Accord, Syllabus* Points 6 and 8, *Hartley v. Crede, supra. See Syllabus* Point 12, *Anderson v. Moulder, supra; Syllabus* Point 5, *Haddox v. Suburban Lanes, Inc., supra; Syllabus* Point 6, *Puffer v. Hub Cigar Store, Inc.,* 140 W.Va. 327, 84 S.E.2d 145 (1954).[7]

 For the plaintiff to prove his case, he need not show his injury resulted solely from the physician's negligence. The plaintiff's burden of proof in a medical malpractice case is satisfied when the plaintiff shows the physician's "acts or omissions increased the risk of harm to the plaintiff and that such increased risk of harm was a substantial factor in bringing about the ultimate injury to the plaintiff[.]" *Syllabus* Point 5, *Thornton v. CAMC,* 172 W.Va. 360, 305 S.E.2d 316 (1983); *Syllabus* Point 6, *Catlett v. MacQueen,* 180 W.Va. 6, 375 S.E.2d 184 (1988) (*per curiam* );

6. Although a plaintiff usually must present expert evidence to support even a prima facie claim of medical malpractice, there are situations where the physician's lack of care or skill is so great and gross that expert testimony is unnecessary. *See Syllabus* Point 4, *Totten v. Adongay, supra.*

7. Stated another way, "[f]oreseeable injury is a requisite of proximate cause, and proximate cause is a requisite of actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted." *Syllabus* Point 7, *Puffer v. Hub Cigar Store, supra,* citing, *Osborne v. Atlantic Ice & Coal Co.,* 207 N.C. 545, 177 S.E. 796 (1935). *Accord, Syllabus* Point 6, *Haddox v. Suburban Lanes, Inc., supra.*

*Syllabus* Point 1, *Reager v. Anderson,* 179 W.Va. 691, 371 S.E.2d 619 (1988).

## IV.

█ The parties have presented conflicting expert testimony regarding the standard of medical care owed Mr. Bellomy. The Court need not resolve that issue, however, because there is insufficient evidence to find any act or omission of the government doctors, even if amounting to negligence, proximately caused Mr. Bellomy's injuries.

Assuming the government physicians failed to perform all the tests upon Mr. Bellomy as may have been warranted by Mr. Bellomy's symptoms when he was admitted to the Veteran's Administration hospital in January of 1992, there simply is no evidence a lack of adequate testing proximately caused Mr. Bellomy's injuries. Dr. Kimmey, Mr. Bellomy's expert and treating oncologist, believed Mr. Bellomy's cancer was present when he was examined by the government doctors. But Dr. Kimmey could not state with any degree of probability whether the cancer was discoverable at that time.[8]

The government's oncologist, Harvey M. Golumb, M.D. testified the course of treatment, even if the lymphoma had been discovered by the government doctors in January of 1992, would have been no different than the treatment actually rendered following discovery of the lymphoma by Dr. Traylor in June of 1992.[9] Dr. Golumb also testified that, in regard to the relapse suffered by Mr. Bellomy, the size of the cancerous tumor found was not as important as the type of the cancer cells involved. Thus, although Mr. Bellomy had a large cancerous growth (16 centimeters), the cause of his relapse had less to do with the size than with the type of cancer cell.[10] Like Dr. Kimmey, Dr. Golumb could not state with any probability how large Mr. Bellomy's cancer was when he was admitted to the Veteran's Administration hospital in January of 1992.[11]

It is clear to the Court the plaintiffs have failed to prove any act, or in this case omission on the part of the government doctors that proximately caused Mr. Bellomy's lymphoma relapse. The plaintiffs have not proven with a reasonable probability Mr. Bellomy's cancer was *discoverable* when he was examined initially by the government doctors. If there is no evidence within a reasonable probability the cancer could have been then discovered, plaintiffs have failed to prove that lack of care by the government doctors was a proximate cause of Mr. Bellomy's relapse injuries. *See Syllabus* Points 3 and 4, *Matthews v. Cumberland & Allegheny Gas Co., supra.*

Because plaintiffs have failed to establish proximate causation of their injuries stemming from the United States' conduct, the Court **GRANTS** judgment in favor of the United States and **ORDERS** this case dismissed from the docket.

---

8. Dr. Kimmey testified as follows:
 "Q. And because of [the tumor's] size [when discovered], you feel it was present in some form in January?
 "A. Yes. Because in some form, it was there. Was it a detectable size? I couldn't tell you." Kimmey deposition at 72–73.

9. Dr. Golumb testified, "[I]n this case I felt that a delay of four months, if it existed at all, would not be of prognostic significance, meaning it would not have changed the outcome of the case." Golumb deposition at 21.

10. Dr. Golumb stated, "[I]n this particular tumor and this high grade lymphoma the most important thing is the type of cell and not the type of tumor." Golumb deposition at 23.

11. Dr. Golumb stated, "I think it took months to grow. And whether it is several months or a few more, I can't tell because I don't have any way of measuring or counting backwards." Golumb deposition at 42.