542 S.E.2d 457

**Crystal Kay BRADY, Administratrix of the Estate of Joseph Matthew Payne, deceased, Plaintiff Below, Appellant,**

v.

**DEALS ON WHEELS, INC., Carlos Hodge & Edwin L. Stratton, Harley Blankenship and E. Lucille Curry, jointly and severally, Defendants Below, Appellees.**

and

**Robert Allison and Kathryn Allison, Plaintiffs Below,**

v.

**Deals on Wheels, Inc., Carlos Hodge & Edwin L. Stratton, Harley Blankenship and E. Lucille Curry, jointly and severally, Defendants Below, Appellees,**

and

**Crystal K. Brady, Administratrix of the Estate of Joseph Matthew Payne, deceased, Defendant Below, Appellant.**

No. 27664.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 2000.

Decided Dec. 4, 2000.

Dissenting Opinion of Justice Starcher Jan. 11, 2001.

---

638

Andrew A. Raptis, Esquire, Charleston, West Virginia, Attorney for Crystal Kay Brady.

Robert P. Lorea, Esquire, William J. Hanna, Esquire, Flaherty, Sensabaugh & Bonasso, Charleston, West Virginia, Attorneys for Deals on Wheels.

PER CURIAM:

Crystal Kay Brady (hereinafter "Appellant"), Administratrix of the Estate of Joseph M. Payne, appeals a final order of the Circuit Court of Kanawha County granting summary judgment to Deals on Wheels, Inc., Carlos Hodge and Edwin Stratton, Harley Blankenship and E. Lucille Curry (hereinafter "Appellees") in a wrongful death action. The Appellant contends that summary judgment was inappropriate and that genuine issues of material fact exist. We affirm the decision of the lower court granting summary judgment.

## I. Facts

On July 15, 1996, Joseph M. Payne (hereinafter "Mr. Payne" or "decedent") traded a motorcycle and various accessories for a 1980 Ford Mustang. He conducted this trade at Deals on Wheels, a used car dealership located in St. Albans, West Virginia. Appellee Mr. Edwin Stratton is the principal owner of Deals on Wheels and Appellee Mr. Carlos Hodge was a business associate of Mr. Stratton.

Prior to the trade, the Mustang had allegedly been driven extensively by Mr. Danny Carroll, a friend and employee of Mr. Stratton. Mr. Carroll testified that he had driven the vehicle prior to the sale to Mr. Payne and that he had not experienced any difficulties with the performance of the vehicle. Additionally, the car's prior owners, Lucille Curry and Harley Blankenship, both testified that the car, including the brake system, functioned properly when they traded the Mustang to Deals on Wheels approximately four months before Mr. Payne obtained the vehicle.

Witnesses testified that on July 15, 1996, Mr. Payne obtained the vehicle, drove it a short distance, and then left the highway to purchase gasoline, an exercise which required braking power to complete. According to witness testimony, Mr. Payne then exited the gas station and began traveling east on West Main Street in St. Albans, West Virginia. Mr. Payne shortly thereafter suffered a fatal accident as he attempted to negotiate a curve in the road while traveling at a high rate of speed. Witnesses observed the Mustang veer off the road and reenter the road directly into the path of a Chevy Blazer driven by Robert F. Allison. Mr. Payne was ejected from the car. The Mustang then careened into a pickup truck driven by Billy Joe Goodall, traveling west behind Mr. Allison's blazer. Mr. Payne never regained consciousness and died shortly thereafter.

On January 13, 1997, Mr. Payne's mother, Appellant Crystal Kay Brady, filed a complaint against Deals on Wheels, Inc., Carlos Hodge, Edwin Stratton, Harley Blankenship, and Lucille Curry alleging that the accident was caused by defects in the 1980 Ford Mustang driven by the decedent and that the Appellees were negligent in failing to discover and repair the allegedly defective brakes. The Appellant introduced the deposition testimony of a certified automobile mechanic, Mr. David H. Sanson. Mr. Sanson had assisted at the scene of the accident with the removal of the vehicles from the roadway. He also examined the Mustang approximately two and one-half months after the accident and opined that the brakes were defective, due to leakage of brake fluid. Mr. Sanson testified that the brake fluid had been leaking out the rear left brake and that there was not any brake fluid in the master cylinder. The Appellant contended that Mr. Payne consequently had no way of reducing the speed of the automobile as he approached the curve. There were no witnesses regarding brake lights or other circumstances which would indicate that Mr. Payne attempted to apply the brakes.

The Appellees maintained that the accident was caused by the excessive rate of speed at which the decedent was traveling and the decedent's inability to control the vehicle in the curve. An accident reconstruction specialist, Mr. Daniel R. Aerni, testified on behalf of the Appellees, maintaining that the fatal accident was caused by the excessive rate of speed, calculated at approximately sixty-one miles per hour in a thirty-five mile-per-hour zone. Mr. Aerni found no evidence that the decedent attempted to apply the brakes during the accident or that faulty brakes contributed in any manner to the accident. The Appellant offered no evidence to challenge the accuracy of Mr. Aerni's reconstruction or his calculation that the decedent was traveling in excess of sixty miles per hour at the moment of impact.

On July 15, 1998, Robert and Kathryn Allison filed a complaint against Deals on Wheels, Inc., Carlos Hodge, Edwin Stratton, Harley Blankenship, Lucille Curry, and the Estate of Mr. Payne, contending that the allegedly defective braking mechanism and Mr. Payne's negligent operation of the vehicle caused or contributed to the accident. The two suits were consolidated. On August 31, 1998, the Appellees filed a motion for summary judgment, alleging that no genuine issues of material fact existed and that the Appellees were entitled to judgment as a matter of law. The Appellees maintained that the Appellant had offered no admissible evidence that the decedent attempted to apply the brakes during the accident, no evidence to contradict the Appellees' reconstruction expert, and no evidence that the accident was caused by any alleged defect in the braking system of the automobile.

In response to the Appellees' motion for summary judgment, the Appellant submitted three affidavits attempting to establish that the decedent had a "habit" of applying his brakes in an appropriate fashion and avoiding accidents. The Appellants attempted to justify the introduction of such "habit" evidence under Rule 406 of the West Virginia Rules of Evidence, providing as follows:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Subsequent to a September 18, 1998, hearing on the motion for summary judgment, the lower court, by order entered July 14, 1999, found that the Appellant had:

> failed to make a sufficient showing on the issue of proximate cause, a necessary element of the claim, establishing a causal relationship between the alleged defect with the vehicle and the accident at issue in this case. While the plaintiffs alleged that the subject 1980 Ford Mustang contained defective brakes, they have offered no credible or competent evidence that the allegedly defective brakes, even if the condition existed, were the proximate cause of the accident. As a result, the defendants

are entitled to summary judgment, as a matter of law.

The lower court further concluded that:

the record, when reviewed as a whole, in the light most favorable to the plaintiffs, does not present a genuine issue of material fact with respect to the alleged defect in the vehicle and the cause of the accident as the plaintiffs have filed to present competent and qualified expert and lay testimony on this issue.

The Allisons have not appealed the summary judgment.

## II. Summary Judgment and Standard of Review

 In syllabus point one of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court explained that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is proper where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As this Court observed in syllabus point one of *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995):

" 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

In syllabus point two of *Williams,* this Court continued:

Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

In syllabus point three of *Williams,* this Court explained the burden of a party against whom summary judgment is sought, as follows:

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

In *Gooch v. West Virginia Department of Public Safety,* 195 W.Va. 357, 465 S.E.2d 628 (1995), we explained that "[t]o meet its burden, the nonmoving party must offer 'more than a mere "scintilla of evidence" and must produce evidence sufficient for a reasonable jury to find in a non-moving party's favor.' " *Id.* at 365, 465 S.E.2d at 636 (quoting, in part, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A non-moving party "cannot create a genuine issue of material fact through a mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). In syllabus point four of *Painter,* we acknowledged the necessity of a sufficient showing of an essential element of the plaintiff's burden of proof, as follows:

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

192 W.Va. at 190, 451 S.E.2d at 756, syl. pt. 4.

## III. Establishment of Prima Facie Case of Negligence

 While this Court has consistently maintained that resolution of disputed factu-

al matters is a function of the jury,[1] we have also stated that the initial burden to establish a prima facie case of negligence is upon the plaintiff. In syllabus point two of *Smith v. Edward M. Rude Carrier Corp.*, 151 W.Va. 322, 151 S.E.2d 738 (1966), this Court explained that "[t]he burden is upon the plaintiff to establish a prima facie case of negligence against the defendant in order to warrant jury consideration but such showing may be made by circumstantial as well as direct evidence."

■ Syllabus point six of *Morris v. City of Wheeling*, 140 W.Va. 78, 82 S.E.2d 536 (1954), provides the definition of a "prima facie case," as follows:

A *prima facie* case of actionable negligence is that state of facts which will support a jury finding that the defendant was guilty of negligence which was the proximate cause of plaintiff's injuries, that is, it is a case that has proceeded upon sufficient proof to the stage where it must be submitted to a jury and not decided against the plaintiff as a matter of law.

*See also* Syl. Pt. 3, *Reed v. Phillips*, 192 W.Va. 392 452 S.E.2d 708 (1994); Syl. Pt. 3, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990); Syl. Pt. 2, *Spurlin v. Nardo*, 145 W.Va. 408, 114 S.E.2d 913 (1960).

■ In the present case, the lower court found that the Appellant had failed to establish a prima facie case of negligence since the element of proximate cause had not been sufficiently established by credible evidence. In syllabus point one of *Wehner v. Weinstein*, 191 W.Va. 149, 444 S.E.2d 27 (1994), this Court explained:

" ' "To be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury." Syl. Pt. 3, *Hartley v. Crede*, 140 W.Va. 133, 82 S.E.2d 672 (1954).' Syllabus Point 4, *Haddox v. Suburban Lanes, Inc.*, 176 W.Va. 744, 349 S.E.2d 910 (1986)."

Syllabus Point 11, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990).

*See also Bellomy v. United States*, 888 F.Supp. 760, 766 (S.D.W.Va.1995). In syllabus point three of *Smith v. Penn Line Service, Inc.*, 145 W.Va. 1, 113 S.E.2d 505 (1960), this Court explained that " '[t]he proximate cause of an injury is the last negligent act contributing thereto, without which such injury would not have resulted.' Pt. 2, syllabus, *Webb v. Sessler*, 135 W.Va. 341[, 63 S.E.2d 65 (1950) ]." We have acknowledged that proximate cause is an "elastic and mystical term that is meaningless unless it is applied to the facts of a particular case." 145 W.Va. at 33, 113 S.E.2d at 522–23.

In applying the concept of proximate cause to this particular case, the lower court examined the two avenues through which the Appellant attempted to establish proximate cause and a prima facie case of negligence: the deposition testimony regarding the allegedly defective brakes and the habit testimony regarding the decedent's alleged habit of applying his brakes appropriately. In both instances, the lower court concluded that the evidence sought to be introduced did not constitute credible evidence of proximate cause necessary to establish a prima facie case of negligence. The lower court determined, in the words of *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995), that there were simply no "issues to be tried." *Id.* at 518, 466 S.E.2d at 177.[2]

■ With regard to the Appellant's attempt to utilize deposition testimony of Mr. Sanson to establish proximate cause, the lower court found an absence of reliability in Mr. Sanson's testimony. In syllabus point five of *Overton v. Fields*, 145 W.Va. 797, 117 S.E.2d 598 (1960), this Court explained: "Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." *See also* Syl. Pt. 12, *Board of Education v.*

1. *Sartin ex rel. Sartin v. Evans*, 186 W.Va. 717, 720, 414 S.E.2d 874, 877 (1991).

2. In *Gentry*, this Court explained that "[o]n a motion for summary judgment . . . a circuit court

cannot try issues of fact; it can only determine whether there are issues to be tried." 195 W.Va. at 519, 466 S.E.2d at 178.

*Zando, Martin & Milstead Inc.*, 182 W.Va. 597, 390 S.E.2d 796 (1990); Syl. Pt. 4, *Hall v. Nello Teer Co.*, 157 W.Va. 582, 203 S.E.2d 145 (1974). In *Gentry*, we explained that "[d]eterminations of whether a witness is sufficiently qualified to testify as an expert on a given subject and whether such expert testimony would be helpful to the trier of fact are committed to the sound discretion of the trial court. A trial court's ruling in this sphere should be upheld unless manifestly erroneous." *Id.* at 525, 466 S.E.2d at 184(quoting 195 W.Va. at 519, 466 S.E.2d at 178).

Justice Cleckley, writing for the majority, cautioned this Court that "[e]vidence which is no more than speculation is not admissible under Rule 702." *State v. LaRock*, 196 W.Va. 294, 307, 470 S.E.2d 613, 626 (1996).[3] The vehicle in question had been stored in a lot subsequent to the accident and, according to statements made by Appellant's counsel at oral argument of this case, had been moved several times with a forklift. Mr. Sanson's examination of the vehicle occurred approximately two and one-half months subsequent to the accident.[4] The reliability of testimony regarding such questionably preserved evidence and the ability of the witness to arrive at any conclusion concerning the condition of the brakes immediately prior to the accident was seriously questioned by the Appellees. The vehicle was not safeguarded to preserve the evidence, and it was subject to deterioration during storage. The lower court found that the offered testimony was inadmissible as it would not even tend to prove the condition of the brakes on this vehicle at the time it was sold to Mr. Payne by the Appellees.

Moreover, as observed by the lower court, the Appellant had the burden to establish not only the defect, but to link the defect to the accident by demonstrating that the defect was the proximate cause of the accident. As the lower court stated: "[I]t is not enough for the plaintiffs to simply introduce evidence

supporting the proposition that the brake system was defective. They must also offer evidence that the alleged brake defect, if one existed, proximately caused the accident and the injuries at issue herein." We agree with the determination of the lower court that the testimony of Mr. Sanson regarding the allegedly defective brakes would not have been admissible at trial, and we find that the lower court properly determined that utilization of that deposition testimony would not establish a prima facie case of negligence or an issue of material fact.

■ The Appellant also attempted to establish a prima facie case of negligence through the introduction of three affidavits indicating the decedent's habit of applying his brakes appropriately. The Appellant submitted the affidavits indicating that the decedent was accustomed to driving vehicles at high speeds, requiring him to brake appropriately prior to entering a curve.

■ Commentators on the Federal Rule 406 have noted:

A habit . . . is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time or of giving the hand signal for a left turn or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic. . . . (S)urely any sensible man in investigating whether X did a particular act would be greatly helped in his inquiry by evidence as to whether he was in the habit of doing it. . . . Nevertheless, the judge should possess the discretion usual in this field of circumstantial evidence to exclude if the habit is not sufficiently regular and uniform, or the circumstances sufficiently similar to outweigh the danger, if any, of prejudice or confusion.

---

**3.** Rule 702 of the West Virginia Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

**4.** In the deposition, the parties were unable to ascertain the precise date of the examination of the vehicle by Mr. Sanson. Further, although a videotape was initially made of the examination of the vehicle, the videotape was damaged in some manner and was unable to be used.

E. Cleary, *McCormick on Evidence* § 195, at 462–63 (3d ed.1984). In syllabus point fourteen of *Rodgers v. Rodgers,* 184 W.Va. 82, 399 S.E.2d 664 (1990), this Court explained: "Under Rule 406 of the West Virginia Rules of Evidence, evidence of a person's habit must be shown to be a regularly repeated response to similar factual situations. The trustworthiness of habit evidence lies in its regularity, such that the act or response is shown to be almost semiautomatic."

The lower court concluded that the habit evidence offered by the Appellant was insufficient to establish a prima facie case of negligence or to create a genuine issue of material fact. The individuals submitting the three affidavits did not witness the accident; nor did they have any knowledge concerning the decedent's ability to handle the Mustang he was operating at the time of the accident. One of the individuals submitting an affidavit had never even observed the decedent driving a car. The affidavits did not indicate "a regularly repeated response to similar factual situations," as required by *Rodgers.* 184 W.Va. at 93–94, 399 S.E.2d at 675–76. The affidavits pertained to circumstances very different from that encountered by the decedent on the St. Albans city street. The affiants had observed the decedent driving Jeeps on farms and on a motorcycle on highways. We agree with the determination of the lower court that the three affidavits submitted by the Appellant were insufficient to establish a prima facie case of negligence or defeat the Appellee's motion for summary judgment.

Subsequent to our review of the record, briefs, and arguments of counsel, we conclude that there were no genuine issues of material fact and that summary judgment was appropriate as a matter of law. We therefore affirm the determination of the lower court.

Affirmed.

STARCHER, Justice, dissenting.

(Filed Jan. 11, 2001)

This case presents the most obvious, easy-to-understand example of a jury question that I have seen in many years. The majority opinion goes to great lengths to prove that the plaintiff's expert witness wasn't "reliable" or "credible," and therefore concludes that plaintiff failed to lay out a *prima facie* case of negligence.

The facts in this case are simple: the decedent bought a sports car from a used car dealer. He drove the car several miles from the dealership, went around a corner, lost control, wrecked and died.

The defendant car dealer says the decedent was driving his new sports car too fast—60 miles per hour in a 35 miles per hour zone. The plaintiff hired an expert who says there were no brakes on the sports car—even if the decedent wanted to slow down, he couldn't have. Brake fluid was leaking from the left rear brake drum in large quantities. In sum, we are left wondering, was the decedent killed by driving too fast, or by driving a car with no brakes? This is a classic question for jury resolution.

Yet both the circuit court and the majority opinion reached the conclusion that there was an "absence of reliability" in the plaintiff's expert testimony. The majority opinion finds that the sports car purchased by the decedent was "questionably preserved evidence," and therefore any opinions reached by the plaintiff's expert must be "seriously questioned." In other words, both the circuit court and the majority opinion decided that because the plaintiff's expert was not, by their measure, credible, the opinion could be rejected under the *Rules of Evidence.*

We have said repeatedly that questions regarding the truthfulness or credibility of a witness—expert or otherwise—are questions for a jury. *See* Syllabus Point 3, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994) ("The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995) ("credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). The circuit court and the majority opinion abandoned this fundamental rule. Both the circuit court and the majority

opinion made credibility determinations about the plaintiff's expert, and decided that the evidence just couldn't be that reliable.

The real concern of both the circuit court and the majority opinion was the possible mishandling, alteration, damage, or destruction of the sports car by the plaintiff's expert. However, the solution in such circumstances is not to reject the expert testimony; the solution is to instruct the jury regarding the spoliation of evidence.

If a party can reasonably anticipate litigation, then the party has an affirmative duty to preserve any relevant evidence. When a party mishandles, alters, damages or destroys evidence so as to impair an opponent's opportunity to litigate a case, a trial court should usually give an "adverse inference" instruction to the jury, such that the jury may infer that the altered or missing evidence, if it had been available, would have been unfavorable to the offending party's case. *See Tracy v. Cottrell*, 206 W.Va. 363, 371–374, 524 S.E.2d 879, 887–90 (1999).

In the instant case, the proper, fair remedy would have been to instruct the jury that, if it believed that the plaintiff and the plaintiff's expert had failed to preserve the brake system on the sports car, thereby depriving the defendant and the jury an opportunity to examine the evidence, then the jury could infer that the brake evidence, if it had been available for examination, would have been unfavorable to the plaintiff's case.

A *prima facie* products liability case requires showing that the defendant sold the plaintiff a defective product, and that the defective product proximately caused injury to the plaintiff. In the instant case, the circuit court's and majority opinion's exclusion of the plaintiff's expert testimony eliminated all of the plaintiff's evidence that the

defendant sold the decedent a defective sports car. From that point on, any of the discussion in the majority opinion regarding proximate cause is irrelevant.[1]

Common sense suggests that this case presented a simple, classic set of facts for a jury to sort out. The circuit court and the majority opinion improperly decided that the plaintiff's expert was not reliable, thereby gutting the plaintiff's liability case. I therefore respectfully dissent.

I am authorized to state that Chief Justice McGRAW joins in this dissent.

---

1. The circuit court and the majority opinion appear to focus intently on whether the plaintiff produced expert testimony on causation. Both focused on whether there was evidence proffered by the plaintiff to indicate that a lack of brakes on the decedent's sports car actually caused or contributed to the decedent's accident, and whether the decedent had a "habit" or "pattern and practice" of applying the brakes to slow vehicles.

The circuit court and the majority opinion both carry the litigation mentality to new levels—does it really take an expert to say that a lack of brakes would contribute to an accident when the car was going 60 miles per hour around a sharp, 35 mile per hour curve? Do we really need expert testimony to show that, to a reasonable degree of certainty, the decedent used his brakes to slow his sports car down?

The majority's reasoning threatens to make a simple lawsuit financially unfeasible for all but the wealthy, making true the maxim "He who has the most lawyers, wins."