# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia ex rel. West Virginia Board of Examiners for Speech-Language Pathology and Audiology, Respondent Below, Petitioner**

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 17-0555** (Raleigh County 15-C-530-B)

**Elissa G. Lindsay, Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner State of West Virginia ex rel. West Virginia Board of Examiners for Speech-Language Pathology and Audiology ("WVBESLPA"),[1] by counsel Kelli D. Talbott, appeals the May 26, 2017, order of the Circuit Court of Raleigh County reversing petitioner's final order that reprimanded Respondent Elissa G. Lindsay and ordered that her speech language pathology license be subject to one year of supervised practice. Respondent, by counsel Kyle G. Lusk, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Respondent is a licensed speech-language pathologist registered with the WVBESLPA and has actively practiced as a speech-language pathologist for more than forty years.[2] At all times relevant, respondent was the owner of, and a practitioner at, Beckley Speech Therapy. Additionally, she provided speech-language pathology services at the Beckley Veterans' Affairs Medical Center and served as a consultant, under a contract with Bowers Hospice House of

---

[1] West Virginia Code § 30-32-1 mandates that persons practicing or offering to practice speech-language pathology or audiology in West Virginia must be licensed and registered with the WVBESLPA.

[2] The parties agree that, at all times relevant hereto, respondent held a valid license as a speech-language pathologist and was subject to the jurisdiction of the WVBESLPA.

1

Southern West Virginia, Inc., ("Bowers"), to provide speech therapy services to Bowers' patients.

In or around 2003, Mrs. Underwood, a patient of Dr. Rhonda Guy, was diagnosed with a medical condition that affected her speech, swallowing, and ability to communicate. Nurse Johnson, a friend of Mrs. Underwood, served as Mrs. Underwood's medical power of attorney. During the progression of Mrs. Underwood's illness, Dr. Guy determined that Mrs. Underwood needed an evaluation from a speech-language pathologist who could possibly recommend treatment to improve and/or maintain Mrs. Underwood's ability to speak, swallow, and communicate. Before such an evaluation could be scheduled, Mrs. Underwood was required to submit to a barium swallow test. Based on the results of this test, completed in July of 2013, Dr. Guy determined that Mrs. Underwood could benefit from speech therapy services.

In August of 2013, Dr. Guy referred Mrs. Underwood for an evaluation with a speech therapy group at Raleigh General Hospital. Prior to her scheduled evaluation, Mrs. Underwood became a patient at Bowers. In conjunction with her admission to Bowers, Mrs. Underwood understood that in-home services from a contracted speech therapist could be provided to her through Bowers, and that Bowers would arrange for their contracted speech therapist to contact Nurse Johnson. Accordingly, Mrs. Underwood's scheduled evaluation for speech pathology services at Raleigh General was cancelled.

Thereafter, respondent contacted Nurse Johnson by telephone. Nurse Johnson requested that respondent evaluate Mrs. Underwood's condition and recommend treatment to improve her communication and swallowing. Nurse Johnson alleges that respondent refused to schedule Mrs. Underwood for an evaluation, as respondent claimed she did not have time, due to her busy schedule, to perform an in-home evaluation. Nurse Johnson offered to bring Mrs. Underwood to respondent's office for evaluation, but respondent maintained that she did not have an opening in her schedule. Respondent reportedly advised Nurse Johnson that there was nothing that respondent could do to help Mrs. Underwood and suggested that an evaluation for speech therapy services was futile. Nurse Johnson recalled that respondent advised her that if Mrs. Underwood was having difficulty swallowing, thickening agents could be used. Nurse Johnson further recalled that respondent advised her that if Mrs. Underwood developed a difficulty in communicating, there were computer programs and applications that could assist. Notwithstanding these recommendations, Nurse Johnson claims that respondent made no offer to refer Mrs. Underwood to another speech therapist.[3]

Sometime thereafter, a representative associated with Raleigh General's speech therapy group contacted Nurse Johnson to inquire why Mrs. Underwood's appointment with that group had been cancelled. Nurse Johnson advised the representative of her communication with respondent and reportedly characterized the communication as a refusal to evaluate Mrs. Underwood. On February 10, 2014, this representative, believing respondent's conduct to be

_____

[3] Ultimately, Mrs. Underwood was evaluated by another speech therapist upon Dr. Guy's referral.

potentially unethical and determining that she was ethically bound to report respondent's conduct to the WVBESLPA, filed a complaint against respondent with petitioner. The complaint referenced respondent's communications with Nurse Johnson and alleged respondent's failure to treat Mrs. Underwood.[4]

On March 20, 2014, petitioner found probable cause to initiate an investigation of respondent's actions and, on March 31, 2014, petitioner issued a formal complaint against respondent. The formal complaint alleged that respondent exhibited unprofessional conduct, provided a substandard level of care, and abandoned a patient. On April 21, 2014, respondent wrote to petitioner and formally refuted all claims. First, respondent denied that Mrs. Underwood was her patient. Respondent recalled that she specifically advised Nurse Johnson that she had no availability to accept new patients and denied telling Nurse Johnson that she could not see Mrs. Underwood for any reason other than respondent's unavailability. Because of her full caseload and patient waiting list, respondent argues that there was no establishment of a therapist-patient relationship between her and Mrs. Underwood. Second, respondent acknowledged that she was personally acquainted with Nurse Johnson and knew her to be a highly qualified nurse. Given Nurse Johnson's medical background, respondent discussed with her the possible need for Mrs. Underwood to have a pureed diet with nectar thickening liquids.[5]

An evidentiary hearing was held before petitioner's hearing examiner on December 9, 2014. On April 10, 2015, the hearing examiner issued findings of facts and conclusions of law and recommended that the complaint against petitioner be sustained. The hearing examiner found that respondent provided substandard care to Mrs. Underwood; that respondent abandoned Mrs. Underwood as a patient; and that respondent's actions constituted unprofessional conduct. The hearing examiner noted that it does not meet the professional standard for a speech pathologist to recommend a thickening agent to a patient without an in-person evaluation. Thereafter, petitioner's board members met and adopted the hearing examiner's recommended decision. By final order, entered May 5, 2015, petitioner reprimanded respondent and ordered that she be subject to one year of supervised practice.

Respondent appealed petitioner's final order to the Circuit Court of Raleigh County. On January 4, 2016, a hearing was held in circuit court and, by order entered May 26, 2017, the circuit court reversed and vacated petitioner's order. The court ruled that petitioner's May 5, 2015, order was improper because it was affected by error of law and was clearly wrong.

---

[4] The reporting representative is also a member of the WVBESLPA. However, because of her involvement, the representative was voluntarily recused from all WVBESLPA deliberations and decision making related to respondent. Mrs. Underwood's family filed no formal complaint against respondent with the WVBESLPA or otherwise.

[5] Respondent argued that it was her belief that the individual who administered the barium swallow test to Mrs. Underwood, which preceded any speech therapy evaluation, would have previously discussed the issue of thickening agents in liquids administered to Mrs. Underwood

Specifically, the circuit court found that the evidence below did not support the conclusion that Mrs. Underwood was a patient of petitioner, either by specific acceptance of her as a patient or by respondent's contract with Bowers. The court reasoned that professionals may decline to enter into a professional-client relationship and, accordingly, it must be shown that a professional agreed to the relationship. Here, respondent's purported acceptance of Mrs. Underwood as a patient was based solely upon the conflicting recollections of respondent and Nurse Johnson of their telephone conference. The court cited Nurse Johnson's testimony wherein she stated that respondent told her that she did not have time to evaluate Mrs. Underwood and, thus, could not accept her as a patient. Given this testimony, the circuit court reasoned that no therapist-patient relationship existed between respondent and Mrs. Underwood. The court was critical of petitioner's failure to introduce the contract between respondent and Bowers as an exhibit, particularly in light of petitioner's claim that the mere existence of the contract created the therapist-patient relationship between respondent and Mrs. Underwood.

The circuit court further found that the evidence did not support petitioner's conclusion that respondent abandoned a patient within the meaning of West Virginia Code § 30-32-19(g)(13). West Virginia Code § 30-32-19(g)(13) prohibits "[a]bandoning . . . a patient . . . in need of immediate professional care without making reasonable arrangements for the continuation of care[.]" The court reasoned that the applicable statute did not require that respondent, as a practitioner who did not have a patient relationship with Mrs. Underwood, refer Mrs. Underwood to other practitioners or make arrangements for her care. The court found that in making a finding that respondent had abandoned Mrs. Underwood as a patient, the hearing examiner misapplied the law.

The circuit court additionally ruled that the evidence did not support the conclusion that petitioner recommended any particular course of treatment for Mrs. Underwood. The court concluded that the evidence did not support petitioner's claim that respondent's alleged statement that she could do nothing to help Mrs. Underwood was a professional decision without evaluation. It is from the circuit court's May 26, 2017 order that petitioner now appeals.

Regarding the general review of administrative orders, we have long held that:

[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

We have further held that

"[g]rievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual

4

determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syl. Pt. 1, *Cahill v. Mercer County Bd. Of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

Syl. Pt. 1, *Sloan v. Dep't of Health & Human Res*, 215 W. Va. 657, 600 S.E.2d 554 (2004).

In its petition for appeal, petitioner advances three assignments of error. First, petitioner alleges that the circuit court erred in finding that respondent did not violate her ethical responsibility to provide services to her patient. Critical to this conclusion is the determination as to whether Mrs. Underwood was respondent's patient. While petitioner acknowledges that its rules and statutes do not define the term patient, it argues that because respondent was the contracted speech pathologist for Bowers and Mrs. Underwood was a Bowers' patient, therefore, Mrs. Underwood was respondent's patient. Conversely, respondent argues that the circuit court did not err in finding that there was no therapist-patient relationship established between respondent and Mrs. Underwood to trigger ethical violations.

Based on our review of the record, we agree with respondent and concur with the circuit court's determination that no therapist-patient relationship was established between respondent and Mrs. Underwood. In syllabus point five of *Aikens v. Debow*, 208 W. Va. 486, 541 S.E.2d 576 (2000), we held that

[t]he determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law.

We have further noted that "[g]enerally, it is axiomatic that unless such [physician-patient] relationship is established a legal duty cannot exist between the parties." *Gooch v. W. Va. Dep't of Pub. Safety*, 195 W. Va. 357, 366, 465 S.E.2d 628, 637 (1995). Petitioner argues that its hearing examiner correctly determined that a therapist-patient relationship existed between respondent and Mrs. Underwood simply by virtue of respondent's consultant contract with Bowers. While a copy of the contract between respondent and Bowers was not admitted as evidence below, a portion of the contract was cited by respondent and was referenced by the circuit court in its order. The contract states, in part, as follows:

WHEREAS, Speech Therapist agrees to assume the responsibility for providing speech therapy services, therefore:

1. The speech therapist agrees:

   a. To participate in the establishment of the plans of care for patients when appropriate.

Respondent contends that the qualifying language of "when appropriate" negates

petitioner's argument that the mere existence of the contract between respondent and Bowers rendered Mrs. Underwood a patient of respondent. We have held that

> "'It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.' *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962), Syllabus Point 3." Syllabus Point 2, *Bennett v. Dove,* 166 W.Va. 772, 277 S.E.2d 617 (1981).

Syl. Pt. 1, *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 196 W. Va. 97, 468 S.E.2d 712 (1996).

We find that, here, the qualifying language of "when appropriate," when given its express application, supports the circuit court's ruling. As the circuit court reasoned, if the use of the word "patient" in respondent's contract with Bowers is intended to refer to patients of Bowers, it must be determined whether the qualifier "when appropriate" allows respondent the discretion, due to time constraints, to perform the evaluation of Mrs. Underwood. In order to determine the scope of respondent's professional duty to Mrs. Underwood, we must examine whether sufficient evidence was offered to establish the creation of a therapist-patient relationship. Here, we agree with the circuit court's reasoning that there was not satisfactory evidence below to establish the creation of the therapist-patient relationship. Accordingly, no finding can be made as to whether respondent breached, violated, or appropriately discharged any such duty related to Mrs. Underwood. See *Gooch*, 195 W. Va. at 366, 465 S.E.2d at 637. Accordingly, the circuit court did not err in reversing petitioner's decision on the ground that the hearing examiner misapplied the law. *See* W.Va. Code § 29A-5-4(g)(4).

In its second assignment of error petitioner argues that the circuit court ignored petitioner's conclusion that respondent violated petitioner's code of conduct in failing to provide a referral to her patient. Petitioner references the hearing testimony of its expert, Erin Ball, a member of the WVBESLPA, who testified that respondent violated West Virginia Code § 30-32-19(g)(13), which prohibits the abandonment of patients without "making reasonable arrangement for the continuation of care." Respondent counters that because the evidence below was insufficient to establish as therapist-patient relationship between respondent and Mrs. Underwood, the requirements of West Virginia Code § 30-32-19(g)(13) were not triggered. Based upon our review of the record, we agree with respondent and find no error. As noted above, there is insufficient evidence to establish the creation of a therapist-patient relationship between respondent and Mrs. Underwood. Accordingly, the circuit court did not err in reversing petitioner's decision on the ground that the hearing examiner misapplied the law. *See* W.Va. Code § 29A-5-4(g)(4).

Petitioner asserts in its final assignment of error that the circuit court erred in re-weighing the evidence before it and incorrectly finding that respondent did not recommend treatment for a patient without evaluating the patient. Specifically, petitioner references respondent's mention to Nurse Johnson, during a brief telephone conference, of Mrs. Underwood's possible use of thickening agents and her suggestion that Mrs. Underwood could benefit from the use of computer or tablet programs. Petitioner classifies these suggestions as recommendations for

treatment and is critical of respondent for making such recommendations in the absence of an examination or evaluation of Mrs. Underwood.

Respondent asserts that the evidence offered below does not support petitioner's conclusion that respondent recommended a course of treatment without sufficient evaluation of Mrs. Underwood. Respondent cites to portions of Nurse Johnson's testimony wherein she testified that when asked if respondent recommended any treatments such as thickening agents, respondent told her "vaguely" that Mrs. Underwood "could" use thickening agents or employ certain computer programs. As respondent and Nurse Johnson were acquainted in a professional capacity through other work, respondent qualified her statement to Nurse Johnson with "[y]ou know that stuff."

Based upon our review of the record, we agree with respondent and find the circuit court did not err in reversing petitioner's decision as clearly wrong in light of the evidence on the whole record. In its order, the circuit court duly noted its deference to the factual determinations made by the tribunal below, but found that petitioner disregarded, without explanation, the context in which respondent's statements were made to Nurse Johnson. In her testimony before the hearing examiner Nurse Johnson testified that she acknowledged that she knew what needed to be done for Mrs. Underwood, but that she "really need[ed] a speech therapist." Further, Nurse Johnson acknowledged that respondent did not recommend the use of any specific type of thickening agent or recommend a specific type of computer for Mrs. Underwood. The court noted, and we agree, that given the context in which respondent's statements to Nurse Johnson were made that it could not be reasonably understood by Nurse Johnson that respondent was making specific recommendations as to a treatment regime for Mrs. Underwood. Accordingly, based on the record as a whole, the circuit court did not err in determining that petitioner's underlying decision was clearly wrong. *See* W.Va. Code § 29A-5-4(g)(5).

For the foregoing reasons, we affirm the circuit court's May 26, 2017, order.

Affirmed.

**ISSUED:** June 15, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating

7